```
 1                UNITED STATES DISTRICT COURT

 2                FOR THE DISTRICT OF DELAWARE

 3

 4     VEHICLE INTERFACE            :   CA NO. 12-1285-RGA

 5     TECHNOLOGIES, LLC,           :   June 14, 2013

 6                                  :

 7              Plaintiff,          :   1:00 o'clock p.m.

 8                                  :

 9     v.                           :

10                                  :

11     JAGUAR LAND ROVER NORTH      :

12     AMERICA, LLC,                :

13                                  :

14              Defendant.

15     ............................

16

17

18              TRANSCRIPT OF DISCOVERY DISPUTE

19         BEFORE THE HONORABLE RICHARD G. ANDREWS

20            UNITED STATES DISTRICT JUDGE

21

22

23     APPEARANCES:

24

25     For Plaintiff:     FARNAN LLP
```

```
 1                        BY:  BRIAN E. FARNAN, ESQ

 2

 3

 4

 5

 6    For Defendant:      SHAW KELLER LLP

 7                        BY:  JOHN W. SHAW, ESQ

 8                        BY:  STEPHANIE O'BYRNE, ESQ

 9                             -and-

10                        LATHAM & WATKINS

11                        BY:  CLEMENT S. NAPLES, ESQ

12

13

14

15

16

17

18

19

20

21    Court Reporter:        LEONARD A. DIBBS

22                           Official Court Reporter

23

24

25
```

```
 1              P R O C E E D I N G S

 2

 3          (The proceedings occurred at 2:05 o'clock p.m. as

 4      follows:)

 5

 6          THE COURT:  Good afternoon, everyone.

 7          Please be seated.

 8          So we have this issue in Vehicle Interface Technologies

 9      v. Jaguar, No. 12-1285.

10          Mr. Farnan, I see you here representing the plaintiffs?

11          MR. FARNAN:  Yes, your Honor.

12          THE COURT:  There's nobody on the phone?

13          Is there actually out of town counsel involved in this

14      or is it just you?

15          MR. FARNAN:  They're involved, but it's just me today,

16      your Honor.

17          THE COURT:  So the letter that I got, was that written

18      by you or out of town counsel?

19          MR. FARNAN:  It was written by us both, your Honor.

20          THE COURT:  All right.

21          I'm sorry.  Ms. O'Byrne, you have two people with you,

22      one of whom I know, and one of whom I don't think I know.  I'm

23      guessing.

24          MR. NAPLES:  I've been before you once, your Honor, but

25      very briefly.
```

 1          THE COURT:  You're Mr. Naples?

 2          MR. NAPLES:  Yes.

 3          THE COURT:  Mr. Shaw.

 4          MR. SHAW:  Good afternoon, your Honor.

 5          THE COURT:  I guess I wasn't aware, but Ms. O'Byrne

 6     works with your firm?

 7          MR. SHAW:  That's correct.

 8          THE COURT:  That had passed me by.

 9          All right.

10          And, so, I think the issue here.

11          Actually, Mr. Farnan, is your -- the one thing that

12     wasn't a hundred percent clear to me from your letter is, is

13     your response, essentially, we don't have any earlier date of

14     conception than the date the patent was filed, or -- or

15     conception reduction to practice, or is it, well, maybe we have

16     a date, but we don't have to give it until they do their

17     invalidity contentions?

18          MR. FARNAN:  It's both, so it is at this time.  That's

19     our good faith answer.

20          To get an earlier date, it requires extensive

21     investigation, interviewing prosecuting attorneys, clients,

22     inventors, trying to find documents to corroborate --

23          THE COURT:  Well, there's one inventor, right?

24          MR. FARNAN:  Yes.

25          THE COURT:  They say you represent the inventor.

1          MR. FARNAN:  We do.

2          THE COURT:  How hard is it to ask the inventor?

3          MR. FARNAN:  Well, if we could just ask him, and get an

4    answer, and that answer would suffice, it wouldn't be hard, but

5    that's not the case.

6          If we called and said, Give us your best estimate of

7    when you reduced it to practice.

8          And he said, Today.

9          The defendants are going to challenge it.  It's not as

10   if this is like a yes or no question.

11         THE COURT:  I understand it's not a yes or no question,

12   but it's a question that is pretty much uniquely within the

13   capacity of the inventor to give you all the materials you

14   needed to whatever investigation there is to see whether you can

15   corroborate an earlier date of conception and reduction to

16   practice and the filing date, right?

17         MR. FARNAN:  That's right.

18         I mean he is the inventor, right.  We don't deny that.

19   But it's beyond just saying -- first of all, it happened a

20   decade ago.

21         So it's beyond him just saying, Oh, I remember.

22         It only becomes relevant if they have prior art that

23   predates the patent only by a limited amount of time.

24         We may never get to this analysis, because if their

25   prior art goes back a significant amount of time, we don't even

1    raise this issue, because we'll say, Yes, that is prior to the

2    patent.

3    But when it comes to asking the inventor, he has to go

4    through documents, trying to find all these documents, then they

5    want to talk to the prosecuting attorneys.

6    THE COURT:  And you didn't get him to get all his

7    documents before you filed suit?

8    MR. FARNAN:  We have some which we produced, which they

9    have, and that was when we did the supplemental answers to the

10    interrogatories, but we can't say that today that we have every

11    document.

12    He's still looking, and when we find them, we'll

13    produce them.  It's not something like we're sitting on a stack

14    of paper, or we're sitting on an answer saying we have a gotcha

15    moment.  That's not what it is.

16    Okay.  We gave them -- right now we gave you the

17    documents we have -- which they have.  They're going to depose

18    the prosecuting attorney in July, which they'll get more

19    information, and as this develops, we'll give more.

20    I think you have to look at how this usually occurs in

21    litigation.  It's a process.  You have to look at the state of

22    the litigation we're in right now.  Right now we're not even

23    through the initial default disclosures.  We're not even through

24    document.

25    THE COURT:  Wait.  But the initial default disclosures

1 have nothing to do with the actual answer.  They only have to

2 do, to some extent, with whether there's a necessity for an

3 answer.

4      MR. FARNAN:  That's right.

5      Well, the default deals with the stage of the

6 litigation, the process, so we haven't been through document

7 production yet, which is not for another two months.

8      THE COURT:  And the documents that they ask for might

9 actually depends on what your conception date is.

10      MR. FARNAN:  Well, they have asked for those documents,

11 and we've produced some, and are still working on that.

12      So what you normally have in litigation is this is not

13 something that you would get an interrogatory early in the case,

14 in our experience.

15      There's only one defendant moving here, and, in our

16 experience, it's a process.  You develop it through the

17 inventor's testimony at deposition.  You develop it through the

18 prosecuting attorney's deposition.  You develop it through

19 documents and then you get a date.  And it has to be

20 sufficiently in advance, so they're on notice.

21      You can't say, Here's what we're going to plead.

22      THE COURT:  Okay.  Well, let me ask -- and I don't know

23 what kind of inventor your inventor is.  I don't know what kind

24 of case this is other than the defendant seems to be a car

25 company.

1        Has the inventor given you what he or she thinks is the

2    date?

3        MR. FARNAN:  No, not to a certainty, and that's --

4    that's part of the problem.

5        THE COURT:  Well, when you say, "not to a certainty,"

6    they've given you a date that is somewhere before the filing

7    date?

8        MR. FARNAN:  Well, we would think -- we produced

9    documents of some dates prior to the filing date.  We need

10    corroboration.  And that's, I guess, the big issue here.

11        If he just said a date, they're not going to accept

12    that date.

13        THE COURT:  No, no, no.  That's a matter for proof down

14    the road.  If you say a date that is one year before the filing,

15    yes, they're going to attack that as not something that you can

16    prove down the road, but it also tells them that while they're

17    doing this search for the immense prior art, and whatever

18    technology we're involved in here, that things that are more

19    than a year before the filing date are going to be better than

20    things that are between those two dates.

21        MR. FARNAN:  That's right.  And we haven't concluded

22    that investigation.  We're working on it.

23        And, in fact, I mean we were just sitting on something

24    and delaying disclosing it, that wouldn't be proper.  This is

25    not the way it's done.  The inventor is a physician.  He's a

1    full-time physician.  He has gathered documents.  We produced

2    the.  We're looking for more.  We're trying to interview the

3    prosecuting attorney.  This is not something that is required

4    for a Rule 11 filing of a complaint.

5          THE COURT:  No, I understand that.  I'm not --

6          MR. FARNAN:  It's not something like we were focused

7    on.

8          I mean the point is, many times you don't even go

9    through this analysis, because it's not necessary, because there

10    could be -- you don't dispute that certain art is prior to the

11    invention.

12          So this is not routinely done in a case.

13          Is it important in some cases?

14          Yes, but it's more of the process.

15          THE COURT:  Well, here's -- here's what I'm thinking,

16    which is, if the only requirements for an Answer to

17    Interrogatory was, We can prove this at trial, we'd never get

18    anywhere in these cases.

19          MR. FARNAN:  And I agree that that would be wholly

20    deficient in this case.  So we don't dispute that we have to --

21    if -- we may say -- we may stick with the filing of the

22    application, because they may present art before the filing

23    application, then it makes no sense to go down this road.

24          I also agree that we couldn't wait until the

25    depositions are almost complete to say, Here's our gotcha.

1    Here's our gotcha.

2          Wholly improper, and we're not trying to do that, but

3    there is a process where you get their initial contentions.  We

4    look.

5          Say, is it worth going further, digging in,

6    investigating, you know, devoting the resources to this to go

7    down this road.

8          And then you have to properly supplement it.  You can't

9    sit on it and wait and we would do that.  If they think that we

10   did something like that down the road, there's a remedy for

11   that, we were trying to, you know, snowball at the end.  That's

12   not proper.

13         THE COURT:  And, so, are you saying that if I directed

14   you to answer with your best guess, or whatever you want to call

15   it, as to what you contend the conception date is, I take it

16   that you are saying right now, you're contending it's the filing

17   date?

18         MR. FARNAN:  Yes.  And we would be completely content,

19   as your Honor said, when you get to their invalidity

20   contentions, you need to supplement within 45 days, because you

21   need to make a decision here.

22         THE COURT:  Well, here's what I'm going to do, because

23   it seems to me that there's actually -- is there any harm to you

24   to telling you -- to in asking you, because -- to say whatever

25   it is your -- is the inventor somebody who's part of the vehicle

1    interface technology, or is he an inventor as somebody who has a

2    contractual relationship with vehicle interface technology, so

3    that they're complaint with reasonable requests?

4         MR. FARNAN:  The full extent of that, I could not give

5    you a full answer.

6         THE COURT:  Okay.

7         MR. FARNAN:  But I do know do we have -- we have

8    control over him.  No dispute about that.

9         THE COURT:  Okay.  Okay.  And I appreciate that answer.

10        Well, let me just add one other thing, which is, at

11   least from the cases that you all both cited, it didn't seem

12   that any of them actually dealt with this specific situation,

13   which is -- which is -- let me step back.

14        I think you said, Mr. Farnan, that there were two

15   thoughts here; one of which is your best answer, as of today, is

16   it's the filing date, and the second of which is, well, we don't

17   have to answer until they provide invalidity contentions.

18        And I looked at the default standard, which doesn't

19   actually seem to address that particular point, and I can't say

20   that I read all, or for that matter, any of the various cases

21   that you both cited, but from the parentheticals, I thought I

22   could tell that none of them actually addressed this second

23   argument as to whether you can delay answering until after you

24   get invalidity contentions.

25        It seemed to me that --

 1          MR. NAPLES:  Your Honor, I can actually point you to a

 2     case that is exactly on point.  It's cited in two districts.

 3     It's the McKesson case.

 4          THE COURT:  Well, hold on a second.

 5          Is this one that was cited?

 6          MR. NAPLES:  This is one after we saw this kind of

 7     burden-shifting imprimatur argument.

 8          THE COURT:  Sorry.

 9          It's cited in your letter?

10          MR. NAPLES:  It's not cited in our letter.

11          THE COURT:  Oh, okay.

12          So my reading of your letter, without actually reading

13     the cases is, I got it right?

14          MR. NAPLES:  Well, I think that in every case we cited,

15     which was never -- it was never really rebutted at all by them.

16          THE COURT:  Well, because I --

17          MR. NAPLES -- demanded that they provide the date.

18          THE COURT:  Well, but I thought that was just because

19     they were doing weasely answers, not because of the timing

20     issue.

21          MR. NAPLES:  And I think we have -- right -- and I

22     think we have those kinds no later than weasely answers here.

23          With respect to the timing issue, we have done a

24     research, obviously.  We didn't think -- we weren't sure what

25     they were going to argue exactly, so we just did a quick check

1     in the McKesson case --

2               THE COURT:  All right.

3               Can I see it?

4               MR. NAPLES:  Sure.

5               And I highlighted it for you.

6               THE COURT:  I will give you a copy and it's a very,

7     very short portion of the opinion, your Honor.

8               THE COURT:  I was only going to read the highlighted in

9     yellow portion.

10              MR. NAPLES:  If you read the two paragraphs before it,

11    that, essentially, would be the entire case in a nutshell.

12              And this case was cited --

13              THE COURT:  Okay.

14              MR. NAPLES:  Okay.  Go ahead.  I'm sorry.

15              THE COURT:  I'm sorry.

16              Just let me read now.

17              Go ahead, Mr. Farnan, read, too.  We'll see who reads

18    faster.

19              MR. NAPLES:  Page 5.

20              THE COURT:  All right.

21              So you didn't get the highlighted yellow copy?

22              MR. NAPLES:  That was actually my copy.

23              THE COURT:  Okay.

24              MR. NAPLES:  I thought I was going to read it to you.

25    I didn't know we'd be -- we'd be back here today.

1    THE COURT:  Well, give us a chance to read it.

2    (Pause)

3    All right.

4    So I beat Mr. Farnan to the end there.

5    MR. FARNAN:  And if you look at the last paragraph, the

6    party got sanctioned for repeated abuse.  It looks like this is

7    a case that is distinguishable.  Their whole attitude towards

8    discovery.  This case still doesn't talk about Delaware default

9    standards.

10   THE COURT:  But I don't think the Delaware default

11   standard is really applicable, because it's clear that, in fact,

12   discovery is going on, and there are certain things that, yes, I

13   would think that their sequencing of the discovery, the default

14   standard, would suggest a certain order of doing things, but I

15   don't think it's applicable here.

16   MR. FARNAN:  It's not applicable, but routinely -- it's

17   not applicable.  It's not on point, but it sheds light on the

18   issue in that it's routine to serve discovery to get imprimatur

19   objections, and it happens in 80 percent of the discovery that's

20   reserved that is responded to, and then people supplement.

21   What -- what we do -- I mean here we could be saying to

22   them, We haven't received your invalidity contentions yet.  We

23   want those now.  I mean we could --

24   THE COURT:  Well, except for the fact that the Rule 16

25   Conference apparently says they're due July 1st.

1      MR. FARNAN:  Well, in the case -- I'm saying in policy

2    points.

3      So people could just run in and say, We want your

4    invalidity contentions in 30 days.  No extensions.  That's what

5    we want.

6      And they're going to say, Well, we'd like to see your

7    infringement contentions.

8      No, no, no, we want discovery on the invalidity case

9    first.

10      THE COURT:  Well, and that's the reason why we have the

11    default standard.

12      MR. FARNAN:  That's my point.

13      So it has to be -- the policy and theory has to apply

14    across the board.

15      We can't just say, Because conception or reduction in

16    practice isn't a default standard.

17      It's a free shot, it can go first, and things that

18    aren't in the standard can go first, and the things that are

19    have to follow that order.

20      Logically, this is how it should work, especially if --

21    - this is not a eureka moment case, where the inventor can say,

22    you know, I was on my porch, and, bam, I discovered it, and I

23    went in the house and I wrote it down.  That's not this case.

24      So if that was the case, everyone you could say, Well,

25    you could have told him that, you know, three months ago.  You

1   told your whole family every Christmas, you can't tell them that

2   now.

3           That isn't this case.  It's going to take more work,

4   it's going to take corroboration, and we may never get down that

5   path.

6           So where is the orderly -- can I make two points, your

7   Honor?

8           THE COURT:  All right.

9           I'm sorry.  What is your name again?

10          MR. NAPLES:  Naples.

11          THE COURT:  Yes, go ahead, Mr. Naples.

12          MR. NAPLES:  Two points.

13          Your honor, we served these interrogatories in January,

14   because we wanted this information before, well before our

15   invalidity contentions.

16          THE COURT:  Right.  I got it.

17          MR. NAPLES:  And Mr. Farnan said this may never come up

18   in the case, if people don't do this early.

19          I've had the exact opposite experience, and whenever

20   I'm a defendant, this is a very important piece of information

21   we always want to get before the invalidity contentions, because

22   as the cases explain and cite, searching for discovery is time

23   consuming.

24          And the other important point, your Honor, I think Mr.

25   Farnan just may not be fully aware of the record, but there

1    already is a piece of prior art that is ten months before the

2    filing date of this patent.

3        There was a piece of prior art that Ford identified to

4    VIT.  And if you turn to -- I can point to you -- it's

5    identified in their interrogatory response, in Interrogatory No.

6    4, and it's an exhibit to our letter.

7        THE COURT:  Hold on a minute.

8        MR. NAPLES:  Sure.

9        (Pause)

10        THE COURT:  This is Page 11 of your letter -- I mean

11    Page 11 of Exhibit 2 of your letter?

12        MR. NAPLES:  That's correct, your Honor.  Yes.

13        THE COURT:  U.S. Patent No. 6373472?

14        MR. NAPLES:  Correct, your Honor.

15        That patent was published just ten months before the

16    filing date of the patent-in-suit, and I submit we should not

17    have to show this prior to getting these contentions, but we

18    already have a priority dispute here.

19        THE COURT:  Well, okay.  So let's assume, for a moment,

20    that I agree with you.

21        While I understand what you're saying, Mr. Farnan, that

22    I agree with you that, in fact, there's no reason why something

23    that's uniquely within their side, and which I -- you know, I

24    think you do have a right to get the answer.

25        So what about Mr. Farnan's -- what should I do about

1    the fact that they don't know what the answer is?

2              MR. NAPLES:  Right.  Your Honor, two answers to that.

3              The first one is, if they -- they haven't said that.

4    They said that the conception date, and the reduction to

5    practice date, are no longer the filing date.

6              Based on everything we have --

7              THE COURT:  Well, no.  I mean --

8              MR. NAPLES:  -- in our possession, custody, and control

9    --

10             THE COURT:  I'm reading that, because you're right.

11   That's -- how do I say this politely?

12             That's a fairly nonsensical answer, right?

13             MR. FARNAN:  You don't have it be so polite.

14             THE COURT:  So I am interpreting that as saying, it's

15   the filing date?

16             MR. NAPLES:  Mm-hmm.

17             THE COURT:  So, okay.  Go ahead.

18             MR. NAPLES:  So if they want to represent to us that

19   based on all of the information in their possession, custody,

20   and control, which includes the inventor, which he said is in

21   their control, all of the documents they provided to us, which

22   some have dates, some don't have dates, some have authors, some

23   don't have authors, based on all of that evidence, if they're

24   going to tell us that the conception and reduction to practice

25   date is the filing date, that's fine.

1          Now, if they were uncover some document in a week, or a

2     month under a rock that the inventor had forgotten about, and

3     said, We didn't know about that.  Now we want to allege an

4     earlier conception date.  I doubt we would be before you arguing

5     about whether they can do that.

6          THE COURT:  Right, right.  I mean they would have good

7     cause to supplement.

8          MR. NAPLES:  They have all of this information and --

9          THE COURT:  All right.

10          MR. NAPLES:  Okay.

11          THE COURT:  I get what you're saying.

12          Mr. Farnan, what do you have to say about that, because

13     let me tell you what I am inclined to do.

14          I'm inclined to give you some period of time, like

15     about five days, business days, to give your good faith best

16     answer.  And to me, if your client is saying it occurred some

17     time in this time period -- I mean I said your client -- not

18     your client -- if the inventor is saying it occurred some time

19     in this time period, just because you may not -- your client may

20     not be able to prove that, or have doubts about being able to

21     prove it, or have the corroboration, whatever, it strikes me

22     that unless you want to give up the right later on to pick that

23     date, that you should tell him it now.

24          And, you know, maybe in the end, it won't be a date

25     that can be proven.  Maybe it turns out that it's only a few

1    months earlier and it's not effected by all this, so it's not

2    even a litigated issue down the road, but I do think that they

3    deserve your best answer now.

4         And if your best answer is, it's the filing date, well,

5    that's fine.  I do think it's going to -- you know, later on to

6    change it to something else, you're going to have to come across

7    some information that you don't have right now, right?

8         MR. FARNAN:  The best answer.

9         And, so we're clear, when it comes to giving an answer

10   certain, that's the best we can do.  We produced documents that

11   would show earlier dates.

12        I'm not saying there's nothing else out there that

13   could be earlier.  For us to say, certainly, that's all we can

14   say right now, the rest would require more investigation,

15   corroboration, prosecuting attorney, additional documents, and

16   you have to bring all of that together, and that's my point.

17        It's just not saying, What was the date, and when did

18   you reduce it to practice?

19        Answer, put two dates down.

20        It's not just not that easy is our response.

21        I understand your Honor wants good faith efforts.  I

22   understand that.

23        And we're saying, we're going to give that effort, how

24   much effort do you know to give?

25        We've given documents that predate.  We've tried.  We

1    asked the inventor gives us documents.  We turned them over.

2    It's not like we're stonewalling and saying --

3    THE COURT:  I understand, but giving them, you know,

4    what they don't have now, which you do have is -- you have the

5    inventor.  You can talk to the person and find out what, you

6    know, a mass of documents means.  And I understand maybe it's

7    not that big of a mass, but a couple hundred or couple thousands

8    pages.

9    You know, you all can ask questions about, Well, how

10    are we going to corroborate this?

11    You know, are these papers, are they corroborated?  Did

12    he have a lab?

13    I mean he's a medical doctor?

14    MR. FARNAN:  He's a physician.

15    THE COURT:  Okay.

16    MR. FARNAN:  The patent doesn't really --

17    THE COURT:  Okay.  Well --

18    MR. FARNAN:  -- it says dashboard display.

19    THE COURT:  So to the extent that any of your answers

20    depends on the idea that you don't have to provide the

21    information now, because they haven't provided invalidity

22    contentions, I reject that.

23    To the extent that your answer is, That's our best

24    answer, well, you're going to have to live with that, but

25    certainly if you want to amend your answer any time in the --

1      you know, a free amendment of your answer, you've got five

2      business days, okay?

3          MR. FARNAN:  Thank you, your Honor.

4          THE COURT:  All right?

5          MR. NAPLES:  Your Honor, yes.  That's completely fine

6      with us.

7          The only other thing I would ask is, and this is only

8      because it's kind of how this works, right?  If they identify a

9      conception date, that's great, but they also have said to us in

10     their interrogatory response that the inventor would be diligent

11     in reducing the --

12         THE COURT:  Well, no, no.  I am sorry.

13         You're using conception as a shorthand for the whole

14     thing.

15         MR. NAPLES:  It's a reduction to practice, and an

16     explanation of diligence, then we're totally and completely fine

17     with that --

18         THE COURT:  Right.

19         MR. NAPLES:  Yes, your Honor.

20         MR. FARNAN:  I won't agree with it, but if that's your

21     Honor's ruling, I am not going to say it's wrong, but I don't

22     think --

23         THE COURT:  I'm not even actually looking for you to

24     say it's rights.  I'm only looking for you to say I understand

25     it.

1          MR. FARNAN:  No, I understand it, but I thought we were

2     fighting -- we haven't had much argument on the reduction to

3     practice, and doing that within five days, to have the inventor

4     sit down and do all of that is --

5          THE COURT:  Well, but it's something that I think

6     you've either said explicitly, or you said implicitly.  It's not

7     like you're starting from scratch.  You already conducted an

8     investigation into it.

9          MR. FARNAN:  I agree a hundred percent, but the point

10    is to -- if you read their interrogatory, it's not a -- it's

11    just --

12         MR. NAPLES:  What interrogatory?

13         THE COURT:  No. 1.

14         MR. FARNAN:  I'll just read it.

15         VIT contends that diligence was exercised in reducing

16    the invention to practice.

17         So they've, obviously, concluded that that's the case.

18    They just haven't explained it.

19         THE COURT:  Well, actually, given what they said is the

20    filing date, that's actually a meaningless answer.

21         MR. NAPLES:  Your Honor, right.  It doesn't mean it

22    make sense that he knows.  That's why they're asking for it,

23    unfortunately.

24         THE COURT:  Well, you said -- I wouldn't say know --I

25    mean -- you know, because if the answer is, it's the filing

1    date, they really don't to say anything other than it's the

2    filing date, right?

3              MR. NAPLES:  Right.

4              THE COURT:  That's the end of the interrogatory.

5              MR. NAPLES:  That's right.  We agree, your Honor.

6              MR. FARNAN:  Your Honor, I mean, so we're going to

7    take-- I assume we're going to take a good shot at a best guess

8    and push it back --

9              THE COURT:  I would expect.

10             MR. FARNAN:  -- right?

11             THE COURT:  Right.  So, then you need to answer the

12   rest of the interrogatory.

13             MR. FARNAN:  When you read that interrogatory -- first

14   of all, it's about five interrogatories in one.

15             THE COURT:  You know, how many it counts for, that's a

16   different issue for a different date.

17             MR. FARNAN:  It says things like, Describe in detail

18   the facts that are surrounding the first conception and first --

19   both actual and constructive, for each claim for the

20   patents-in-suit.  Any diligence between such conception and

21   respective to reduction to practice, and the contribution of

22   each person to each claim, and identify each document that

23   supports your contention, and each person having knowledge of

24   the facts.

25             THE COURT:  Well --

1          MR. FARNAN:  We will reserve our right.  We will take a

2     good faith answer at the interrogatory.

3          But I don't want your Honor to say I want to rule on

4     the interrogatory, and now you're precluded, because you have to

5     answer everything in here, and you don't say, you know --

6          THE COURT:  Well, do the best you can.

7          MR. FARNAN:  Thank you, your Honor.

8          THE COURT:  Anything else?

9          MR. NAPLES:  Not from me, your Honor.

10         MR. FARNAN:  No, your Honor.

11         THE COURT:  All right.

12     Thank you.

13         MR. NAPLES:  So it is five days.

14          THE COURT:  Five business days.  Next Friday.

15     Is there a holiday?

16     No, I don't think there is.

17     (The proceedings adjourned at 2:31 o'clock p.m.)

18                              * * *

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25