**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| VEHICLE INTERFACE TECHNOLOGIES, LLC, | |
| Plaintiff, | |
| v. | C.A. No. 12-1285-RGA |
| | C.A. No. 12-339-RGA |
| JAGUAR LAND ROVER NORTH AMERICA, LLC, | |
| Defendant. | |

**VEHICLE INTERFACE TECHNOLOGIES, LLC'S
OPPOSITION TO DEFENDANT JAGUAR LAND ROVER NORTH AMERICA, LLC'S
<u>MOTION TO DECLARE THIS CASE EXCEPTIONAL PURSUANT TO 35 U.S.C. § 285</u>**

# TABLE OF CONTENTS

**Page**

I. RELEVANT PROCEDURAL BACKGROUND ........................................................... 2

II. THIS CASE IS NOT EXCEPTIONAL UNDER SECTION 285. ................................... 3

    A. There Is No Evidence That VIT Drove Up Costs To Coerce Settlement. ............. 4

    B. There Is No Evidence That VIT Engaged In Bad Faith Tactics. .......................... 5

    C. Other Cases Cannot Make This Case Exceptional. ............................................... 6

III. VIT'S CLAIM CONSTRUCTION WAS NEITHER UNREASONABLE NOR
UNSUPPORTABLE. ................................................................................................... 9

    A. The '677 Patent Is Presumed Valid. .................................................................. 10

    B. VIT's Proposed Claim Construction of "Pages" Was Not Unreasonable. .......... 11

        1. There Are No Significant Differences Between "One Complete
Full-Screen Image" and "Displayed On A Screen At One Time." ......... 11

        2. There Is Ample Support in The Intrinsic Record For VIT's
Construction. ........................................................................................... 16

IV. CONCLUSION ......................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Broadridge Fin. Solutions, Inc. v. Inveshare, Inc.*,
   2012 WL 1245723 (D. Del. Apr. 11, 2012).........................................................................13

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).............................................................................................................10

*EON Corp. IP Holdings LLC v. Cisco Sys. Inc.*,
   2014 WL 3726170 (N.D. Cal. July 25, 2014).......................................................................4

*Eon-Net LP v. Flagstar Bancorp*,
   653 F.3d 1314 (Fed. Cir. 2011)............................................................................................7

*Gametek LLC v. Zynga, Inc.*,
   2014 WL 4351414 (N.D. Cal. Sept. 2, 2014) ................................................................4, 6, 7

*Immersion Corp. v. HTC Corp.*,
   2015 WL 581572 (D. Del. Feb. 11, 2015) ..........................................................................12

*Lumen View Tech., LLC v. Findthebest.com, Inc.*,
   24 F. Supp. 3d 329, 336 (S.D.N.Y. 2014) .............................................................................8

*MarcTec, LLC v. Johnson & Johnson*,
   664 F.3d 907 (Fed. Cir. 2012)..............................................................................................7

*Microsoft Corp. v. i4i Ltd. P'ship*,
   131 S. Ct. 2238 (2011).........................................................................................................10

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
   134 S. Ct. 1749 (2014)..................................................................................................4, 8, 9

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)...........................................................................................12

*SFA Systems, LLC v. Newegg Inc.*,
   No. 2014-1712, 2015 WL 4154110 (Fed. Cir. July 10, 2015)...............................................7

*Site Update Solutions, LLC v. Accor N. Am, Inc.*,
   2015 WL 581175 (N.D. Cal. Feb. 11, 2015) ..................................................................11, 12

*Small v. Implant Direct Mfg. LLC*,
   2014 WL 5463621 (S.D.N.Y. Oct. 23, 2014) *aff'd*, 2015 WL 4237935 (Fed.
   Cir. July 14, 2015) .....................................................................................................4, 5, 10

*Stragent, LLC v. Intel Corp.*,
    2014 WL 6756304 (E.D. Tex. Aug. 6, 2014) ...................................................................3, 5, 6

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013).............................................................................................10

**Statutes**

35 U.S.C. § 282.......................................................................................................................10

35 U.S.C. § 285.........................................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 11 ...............................................................................................................6, 7, 8

Fed. R. Civ. P. 12(b)(6)........................................................................................................4, 5

Fed. R. Civ. P. 56(a) ..............................................................................................................10

Microsoft Computer Dictionary...................................................................................2, 3, 12, 13

www.dictionary.reference.com...............................................................................................16

Jaguar Land Rover North America, LLC ("JLRNA") seeks an order declaring this case exceptional.  JLRNA's motion asserts that plaintiff Vehicle Interface Technologies, LLC ("VIT") relied on an incorrect construction of a key claim term and acted with a purpose of driving up litigation costs, but much of the motion is devoted to a discussion of VIT's members and the activities of other companies established by them.  A determination that this case is exceptional must be based on what happened in this case.  JLRA cannot sidestep the proof needed to support a finding that this case is exceptional by pointing to other VIT cases, or to cases not involving VIT.  When the totality of the circumstances involving the actions of VIT in this case is considered, the correct result is a determination that JLRNA's motion should be denied.

JLRNA does not point to any litigation misconduct by VIT, or make a credible contention that VIT engaged in any bad faith conduct.  JLRNA complains about the filing of a second lawsuit, but the second lawsuit was necessary only because JLRNA successfully opposed a motion by VIT to amend its infringement contentions.  It is simply not true that the second lawsuit was an attempt to drive up costs, for settlement or any other purpose, and JLRNA offers nothing of substance to justify its accusation to that effect.

On the merits, VIT's proposed construction of the term "pages" is not so meritless as to render the case exceptional.  As explained in the accompanying declaration of Dr. Craig Wills, VIT's proposed "pages" construction is reasonable and is supported both by the intrinsic record and by relevant extrinsic evidence from a source that persons of ordinary skill in the art consider reliable.  The ultimate question of whether VIT's proposed construction of "pages" was correct will be decided by the Federal Circuit, but, as explained in detail below, VIT's construction was not so wrong as to make the entire case exceptional.

## I.      RELEVANT PROCEDURAL BACKGROUND

The Court coordinated claim construction in four cases filed by VIT.  (D.I. 12 ¶ 11.)  The

parties agreed upon certain constructions and subsequently presented disputed terms to the Court

for decision.  (*See* D.I. 42.)  On January 13, 2014, the Court issued a Memorandum Opinion

construing one term, (D.I. 53), and on January 24, the Court issued a Claim Construction Order

setting forth the stipulated constructions of four other claims terms from the '677 patent.  (D.I.

62 (construing "parameter(s)," "optional subsystem(s)/optional subsystem(s) for the vehicle,"

"steering device," "wherein the fixed area and the selectable area each comprise a unique and

static portion of the display," and "set of input devices").)  Neither JLRNA, nor any of the

defendants in the other cases filed by VIT, argued that the term "pages" required construction or

proposed a construction for the term.

On October 3, 2014, JLRNA filed a motion for summary judgment in which it argued

that the '677 patent was anticipated by the 2001 Mercedes-Benz E-Class ("2001 Mercedes"), and

anticipated or rendered obvious by the Palalau reference.  (D.I. 89 at 6.)  JLRNA noted that "VIT

argues that the menus of the 2001 Mercedes do not constitute 'pages,'" (*id*. at 6), but JLRNA did

not offer a construction of "pages."  In part, the parties' disagreement was based on JLRNA's

contention that simple lines of LED text, comparable to a bedside alarm clock and similar

displays, can constitute a "page" within the meaning of the '677 patent.

VIT offered a construction of "pages" in opposition to JLRNA's motion, stating that a

"page" means "one complete full-screen image," a definition that appears in the Microsoft

Computer Dictionary.  (D.I. 96 at 7.)  In reply, JLRNA offered its own construction, arguing that

"'[p]ages' in the '677 Patent means collections or sections of information that can be displayed

on a screen at one time."  (D.I. 100 at 6.)  JLRNA did not challenge the reliability of the

Microsoft Computer Dictionary.

During the summary judgment hearing, VIT provided additional refinement on the construction.  (D.I. 110 at 48:4-7 ("A complete full-screen image, including formatting such as shapes, colors, rotation of fonts.").)  In addition, VIT acknowledged that the summary judgment dispute boiled down to a matter of claim construction.  (*Id*. at 7:13-23; *see also* D.I. 115 at 5 ("During oral argument, the parties agreed that the construction of the term "page" is the only matter at issue for determining whether the 2001 Mercedes prior art reference anticipates all of the asserted claims in the '677 patent.").)

On January 21, 2015, the Court issued a Memorandum Opinion granting JLRNA's summary judgment motion.  (D.I. 115.)  The Court decided that VIT's proposed construction of "pages" was incorrect and that "Defendants' proposed construction better represents the plain and ordinary meaning of the term 'page,' as understood in the '677 patent."  (D.I. 115 at 10.)  Specifically, the Court found that "page" has a "broad definition" "requiring only the inclusion of 'at least one parameter for at least one of a plurality of optional subsystems for the vehicle." (*Id*.)  Moreover, the Court found that "[t]here is nothing in the claims or the specification that requires a 'page' to be a 'complete full-screen image,' or to have a certain degree of 'formatting.'"  (*Id*. at 8.)  The Court also gave no weight to the extrinsic evidence cited by VIT. (*Id*. at 9.)  Having resolved the claim construction issue against VIT, the Court held that the asserted claims of the '677 patent are anticipated by the 2001 Mercedes prior art reference.  (D.I. 115 at 11.)  On June 25, 2015, the Court entered Judgment following a stipulation of the parties. D.I. 132.  On July 10, 2015, VIT appealed.  (D.I. 135.)

## II.    THIS CASE IS NOT EXCEPTIONAL UNDER SECTION 285.

"Every case will have a loser.  To show that the case is exceptional under § 285, [the moving party] must show that it 'stands out from others.'"  *Stragent, LLC v. Intel Corp.*, 2014 WL 6756304, at *5 (E.D. Tex. Aug. 6, 2014) (quoting *Octane Fitness, LLC v. Icon Health &*

*Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014)).  "[A]pplication of the American Rule remains the well-established presumption even in patent cases, and [courts] will not depart from it lightly." *EON Corp. IP Holdings LLC v. Cisco Sys. Inc.*, 2014 WL 3726170, at *5 (N.D. Cal. July 25, 2014).

Even after *Octane Fitness*, "most cases awarding fees continue to involve substantial litigation misconduct."  *Small v. Implant Direct Mfg. LLC*, 2014 WL 5463621, at *4 (S.D.N.Y. Oct. 23, 2014) *aff'd*, 2015 WL 4237935 (Fed. Cir. July 14, 2015)

*Gametek LLC v. Zynga, Inc.*, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) (denying fees in the absence of misconduct because "post-*Octane* decisions awarding fees have concerned egregious behavior").  "Where a party has set forth some good faith argument in favor of its position, it will generally not be found to have advanced 'exceptionally meritless' claims."  *Small*, 2014 WL 5463621, at *3.

### A.     There Is No Evidence That VIT Drove Up Costs To Coerce Settlement.

JLRNA laments that VIT "forc[ed] JLRNA to litigate two separate actions" despite the fact that the second action resulted solely from JLRNA's success in preventing VIT from amending its infringement contentions by adding additional accused products.  (D.I. 139 at 7.) JLRNA then sought to have the second case dismissed on grounds that directly contradicted the argument it used to force VIT to file the second case.  When it denied JLRNA's motion to dismiss, the Court noted that it "denied [VIT's] attempt to amend its [preliminary infringement contentions] because [JLRNA] argued that functional differences between the previously accused product and the newly accused products would cause it undue prejudice."  (D.I. 15 at 4.) Yet, in its Rule 12(b)(6) motion, JLRNA argued that "the products in the initial and present suits are 'essentially the same.'"  (*Id.* at 3.)  As the Court noted in its order denying JLRNA's 12(b)(6) motion, "[JLRNA] cannot have its cake and eat it too."  (D.I. 15 at 4.)  Exceptionality under

section 285 is not established through *chutzpah* such as that displayed by JLRNA.  JLRNA's

assertion that VIT is to blame for the additional costs of "manag[ing] two separate litigations" is

also exaggerated.  The only substantive motions in the second case were JLRNA's unsuccessful

Rule 12(b)(6) motion and the section 285 motion now before the Court.  (D.I. 139 at 19.)

### B.    There Is No Evidence That VIT Engaged In Bad Faith Tactics.

JLRNA does not identify any litigation misconduct by VIT.  The case timely proceeded

through discovery and summary judgment without significant disputes on ancillary issues—a

sign the case was litigated in good faith.  *See Small*, 2014 WL 5463621, at *4 ("[T]hat Small's

case was not determined on the pleadings but proceeded through discovery to summary

judgment serves as further indication that Small's defense of her patent was not without any

good faith basis.").

VIT did not burden the Court (or JLRNA) with unnecessary discovery disputes or

ancillary issues.  The parties resolved most claim construction issues by stipulation.  VIT

pursued only necessary discovery to prepare for trial and never sought unnecessarily to drive up

the cost or burden of litigation on JLRNA.  When JLRNA filed its summary judgment motion,

the case docket had 88 entries, evidencing the minimal number of disputes that required judicial

intervention.

The focus of JLRNA's motion is VIT's "pages" construction, not any other proposed

construction, infringement contention, or vexing litigation tactic that might otherwise support a

section 285 motion.  Courts must view the "totality of the circumstances" when a section 285

motion is evaluated.  *See Stragent*, 2014 WL 6756304, at *4 ("The determination of whether

attorney's fees are warranted under § 285 should be a determination of whether in light of the

totality of circumstances the case *as a whole* is exceptional.") (emphasis in original).  When the

totality of the circumstances is considered, this case does not stand out from others in an unfavorable way.

### C.      Other Cases Cannot Make This Case Exceptional.

JLRNA also attempts to create an air of exceptionality by attacking VIT's members and the activities of other companies established by them.  (*See, e.g.,* D.I. 139 at 7.)  This "case" cannot be made exceptional on the basis of others.

JLRNA directs the Court to other cases in this District and others in which JLRNA (and other defendants) have been sued for patent infringement.  *See id.* at 10-14.  But other cases do not bear on VIT's conduct in this case.  Litigation conduct in separate cases (or by separate parties) does not make a plaintiff's or a defendant's conduct in a case at issue a basis for an award of attorneys' fees.  *See Gametek*, 2014 WL 4351414, at *4 (finding plaintiff's conduct in related litigation is not "relevant to the question of fees in this case").

Suppose a litigant filed or defended 50 cases in a manner characterized by massive litigation misconduct and the repeated assertion of abusive positions for the purpose of delaying recovery due a plaintiff or imposing unnecessary costs on a defendant.  If that litigant behaved appropriately in case 51, doing nothing more than presenting reasonable positions litigated in good faith, the fact that it was an exceptionally bad actor would not justify a finding that case 51 was exceptional.  This case could not be transformed by 50 prior instances of bad faith litigation, and it cannot be transformed by exaggeration about an unproved "pattern."

JLRNA attempts to justify the award of fees in this case based upon events that occurred when it was sued by Vehicle Operation Technologies, LLC ("VOT"), including the fact that the Court granted Ford's Rule 11 motion to dismiss the case.  (*See* D.I. 139 at 12.)  In this case, unlike in *VOT*, JLRNA never sent a Rule 11 letter or served a Rule 11 motion.  It is reasonable to

interpret JLRNA's failure to do so as evidence that JLRNA considered this case at least colorably meritorious and VIT's litigation position neither frivolous nor maintained in bad faith.

Instead of pursuing relief under Rule 11, JLRNA elected not to present a construction of the key term in this case, and thus to attempt to preserve a strategic measure of flexibility in the presentation of its invalidity defense.  JLRNA's conduct, not explained by JLRNA, weighs against a section 285 finding.

JLRNA cannot label VIT a vexatious litigant, so all of its arguments suggesting that an exceptional case finding is necessary for deterrence are aimed at Mr. Mitry and Mr. Salmon or their company, not VIT.  (D.I. 139 at 11, *see also id.* at 23 ("Empire IP has yet to learn its lesson."); *id.* ("Empire IP's motive is obvious...").)  In doing so, JLRNA proposes an interpretation of the exceptional case doctrine that would inappropriately expand section 285 analysis.

The Federal Circuit recently made clear in *SFA Systems, LLC v. Newegg Inc.*, that the existence of other lawsuits filed by a litigant "does not, without more, render [a] case exceptional" or "mandate negative inferences about the merits or purpose of this suit."  No. 2014-1712, 2015 WL 4154110, at *6 (Fed. Cir. July 10, 2015).  The Court of Appeals noted that previous Federal Circuit decisions that considered the existence of other lawsuits before finding a case exceptional, all did so only after evidence of misconduct specific to the litigation at issue was presented.  *See id*. at *7 (citing *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1367 (Fed. Cir. 2013); *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 920 (Fed. Cir. 2012); and *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324–25 (Fed. Cir. 2011).  As *SFA Systems* shows, prior litigation can inform a section 285 decision only when it reasonably sheds light on the case at issue.  There, as here, the proof of relevant improper intent was missing.  The

filing of multiple lawsuits by VIT or other litigations with which Mr. Mitry and Mr. Salmon are affiliated, and the filing of one lawsuit by VOT dismissed under Rule 11 are not sufficient to establish that this case was filed for improper purpose, even if the reasonable manner in which the case was pursued is ignored.

The district court decision cited by JLRNA offers little that is useful in the consideration of conduct existing outside the bounds of a case at issue.  *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 336 (S.D.N.Y. 2014).  In *Lumen View*, the court cited a footnote from *Octane Fitness* that provided a non-exclusive list of factors courts can consider when determining whether a case is exceptional.  134 S. Ct. 1749, 1756 (2014).  The list includes "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"  *Id.* at 1756 n. 6.  The court in *Lumen View*, citing no other authority other than footnote six, decided that "considerations of . . . deterrence" encompassed "the plaintiff's predatory strategy of instigating baseless litigation." *Lumen View Tech., LLC at* 336 (S.D.N.Y. 2014).  The *Lumen View* court misunderstood *Octane Fitness*.

The footnote cited in *Lumen View* appeared at the end of the passage containing the Supreme Court's holding.  The Supreme Court's explanation of its decision says nothing about considering information outside of the litigation at issue:

> We hold, then, that an "exceptional" case is simply one that stands out from others *with respect to the substantive strength of a party's litigating position* (considering both the governing law and the facts of the case) or *the unreasonable manner in which the case was litigated*.  District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Octane Fitness,* 134 S. Ct. at 1756 (2014) (emphasis added).  There is a role for actual proof of a "predatory strategy of instigating baseless litigation," but the exceptionality standard does not

vary according to whether a given litigant is a predator.  Suppose a frequent patent litigation defendant frivolously refused to recognize the merit of 50 cases filed against it, and reportedly engaged in misconduct designed to wear down the plaintiffs.  When, by the luck of the draw, it is sued in a case in which it has a colorable defense, the fact that it has engaged in repeated misconduct in other cases cannot provide a basis for a section 285 finding.  Only when the prior conduct is (a) proved and (b) genuinely supplies information relevant in assessing what happened in the case at issue can it be relevant to any of the *Octane Fitness* factors.

The Supreme Court offers two broad categories of behaviors that can render a case exceptional: 1) the substantive strength of a party's litigation position considering the law and facts of the case; and 2) the unreasonable manner in which the case was litigated.  *Id*.  When reading footnote six in context, it becomes apparent that "considerations of . . . deterrence" are to be applied based only on these factors.

JLRNA's interpretation of section 285 is wrong, and its claim that there is a basis for discussion of a "gross and unrelenting pattern and practice of maintaining baseless actions" shows how cheap talk has become in the ongoing debate about patent litigation.  The interests of justice would be poorly served in the extreme if all it took to achieve results inconsistent with the American Rule was an accusation that a litigant (or its principals) had adopted a "gross and unrelenting pattern and practice of maintaining baseless actions" on the basis of nothing more than the filing of one case found exceptional and others for which no evidence is presented to the Court.

## III.   VIT'S CLAIM CONSTRUCTION WAS NEITHER UNREASONABLE NOR UNSUPPORTABLE.

"Mere assertions that a party's arguments were without merit are generally unavailing; rather, courts are more likely to award fees where a party knew or willfully ignored evidence of

his claims' meritlessness, where such meritlessness could have been discovered by basic pre-trial investigation, or where such meritlessness is made clear to the court early in the litigation." *Small v. Implant Direct Mfg. LLC*, 2014 WL 5463621, at \*3 (S.D.N.Y. Oct. 22, 2014).  Where, as here, JLRNA and Ford did not seek construction of the critical claim term, and did not proffer their own constructions until they filed their summary judgment reply briefs, there is no argument that the meritlessness of VIT's case was called out early in the litigation.  JLRNA and Ford, presumably recognizing there was not a known, clear, or indisputable claim construction that would support them, or unwilling to make a tactical choice that might complicate their ability to avoid an infringement finding, did not take a position on the meaning of "pages" until late in the case, and even then, offered different proposals for the construction of the term.

### A.     The '677 Patent Is Presumed Valid.

A patent holder's decision to enforce its rights in a duly granted patent is presumptively made in good faith.  *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1326-27 (Fed. Cir. 2013).  In addition, "[a] patent shall be presumed valid."  35 U.S.C. § 282.  The presumption of validity can only be overcome by "clear and convincing evidence" in a judicial proceeding.  *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2241 (2011).  Further, on a motion for summary judgment of invalidity, the moving party bears the burden of proof to establish the absence of a genuinely disputed material fact.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  According to these well-settled principles, JLRNA had the substantial burden to present clear and convincing evidence to overcome the presumption that the '677 patent was valid.  To succeed, it was essential that JLRNA present an accurate claim construction against which the validity of the patent could be measured.

JLRNA contends that "VIT should have known the 2001 Mercedes anticipated the '677 patent by July 1, 2013, when JLRNA served its Initial Invalidity Contentions, which identified

the prior art 2001 Mercedes." (D.I. 139 at 8.) JLRNA, however, overlooks its own failure to proffer a construction of "pages" during the claim construction process, in its invalidity contentions, or when it moved for summary judgment. In this context—in the absence of JLRNA's construction of "pages"—it was not exceptional for VIT to rely on the presumption of validity of the '677 patent and the substantial burden facing JLRNA to establish invalidity by clear and convincing evidence.

## B.    VIT's Proposed Claim Construction of "Pages" Was Not Unreasonable.

Though the Court ultimately rejected VIT's proposed "pages" construction, "it is not rare or unusual for a party or even a judge to adopt incorrect claim construction positions." *Site Update Solutions, LLC v. Accor N. Am, Inc.*, 2015 WL 581175, at *8 (N.D. Cal. Feb. 11, 2015). Federal Circuit reversal rates show that erroneous claim constructions by courts and litigants are hardly "exceptional." *Id*. at 8 n.89. For the reasons discussed below, VIT's "pages" construction was not unreasonable and was well grounded in both the intrinsic record and reliable extrinsic evidence. Indeed, important aspects of the arguments against VIT's construction can readily be shown to be themselves erroneous.

### 1.    There Are No Significant Differences Between "One Complete Full-Screen Image" and "Displayed On A Screen At One Time."

Without any meaningful analysis of why VIT's proposed construction is unreasonable, JLRNA recites the Court's criticism that VIT's proposed construction was "not even close." (*See, e.g.,* D.I. 140 at 12.) When VIT's proposed construction is actually evaluated on the merits, however, what first emerges is similarity between VIT's construction and the Court's construction.

VIT's proposed construction was "one complete full-screen image, including formatting such as shapes, colors, and rotation of fonts." (D.I. 151 at 7.) The Court adopted JLRNA's

construction of "a collection or section of information *that can be displayed* on a screen at one time." (*Id.* (emphasis added).) As Dr. Wills explains, both constructions include reference to a "screen" for the display of vehicle subsystem information. (Declaration of Dr. Craig Wills ("Wills Decl."), ¶¶ 11-12.) There is thus no basis for a contention that it was exceptionally wrong for VIT to tie its construction to the idea of a "screen." Based on the Court's construction, it must be concluded that VIT was on target in doing so.

VIT's proposal specifically refers to "a complete full-screen image." "Complete full-screen image" is part of the definition of "page" in the 2002 Microsoft Computer Dictionary. (*See* D.I. 97-1.) Dr. Wills testifies that the Microsoft Computer Dictionary is a source that persons of ordinary skill in the art consider reliable. (Wills Decl., ¶ 15.) While extrinsic evidence is "less significant than the intrinsic record," *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005), extrinsic evidence is not *per se* improper, unjustifiable, or evidence of bad faith or lack of merit. The Federal Circuit has "authorized district courts to rely on extrinsic evidence," *id.*, and recognized that dictionaries, especially technical dictionaries, are among the items of extrinsic evidence that are not only proper tools of claim construction, but potentially quite helpful.

> We have especially noted the help that technical dictionaries may provide to a court "to better understand the underlying technology" and the way in one of skill in the art might use the claim terms. Because dictionaries, and specifically technical dictionaries, endeavor to collect the accepted meanings of terms used in various fields of science and technology, those resources have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology to those of skill in the art of the invention.

(*Id.* (citations omitted).)

Post-*Phillips*, district courts routinely consider extrinsic evidence during claim construction. *See Immersion Corp. v. HTC Corp.*, 2015 WL 581572, at *3 (D. Del. Feb. 11,

2015) (finding "[p]laintiff's technical dictionary evidence to be very probative of how a person

having ordinary skill in the art would have interpreted [the term] at the time the patent was

filed"); *Broadridge Fin. Solutions, Inc. v. Inveshare, Inc.*, 2012 WL 1245723, at *12-13 (D. Del.

Apr. 11, 2012) (adopting a construction based on a technical dictionary definition consistent with

the patent specification).  There is nothing wrong, much less exceptional, with the use of

extrinsic evidence, and there has never been a suggestion that the Microsoft Computer

Dictionary is not a source of information that would be considered reliable by those of skill in

the art.  Dr. Wills confirms that it is.

Nor is there a basis for a suggestion that VIT was exceptionally wrong to argue that the

aspect of "screen" that is relevant in construing "pages" is a "complete full-screen image."

Every depiction of a page in the patent is consistent with this concept, and there is nothing in the

claims, the specification, or any of the figures that would render exceptionally wrong the notion

that a page is a "complete full-screen image."  The construction adopted by the Court points in

that direction: that which "can be displayed on a screen at one time" is obviously no more than

that which can be a part of a "complete full-screen image," and, while "information that can be

displayed on a screen at one time" might be thought of as less than a "full-screen image" in some

iterations, any attempt to establish an exceptional difference between "complete full-screen

image" and "information that can be displayed on a screen at one time" will fail.  Indeed, VIT

respectfully submits that a definition of page that looks to what "can" appear within the confines

of a screen is less plausible than a construction that looks to the actual image on the screen.

A focus on what "can" appear on a screen will inevitably lead to a result that is not

consistent with the patent.  For example, a construction that makes "a collection or section of

information that can be displayed on a screen at one time" a "page" appears to make every word

(or smaller grouping of data sufficient to constitute (a) "information" (b) that amounts to a "collection") a "page," as long as the "collection" "can be displayed" on "a screen" "at one time."  Adding reference to a "section" of information seems unnecessary.  If any "collection of information" can qualify, what is added by a reference to a "section?"  A "section" that can be displayed on a screen "at one time" differs from "a complete full-screen image" only in the sense that the "complete full-screen images" *is* displayed on the screen at one time.  These are not the types of distinctions of which exceptional cases are made.

As Dr. Wills explains, construing a "page" to be "a complete full-screen image" finds support in the background of the invention.  (Wills Decl., ¶¶ 13-14.)  The '677 patent identifies a problem created by the introduction of new features in automobiles.  ('677 patent, Col. 1:15-18.) The specification goes on to explain that "there exists a need for user interface methods and systems that allow a driver to operate the various features while maintaining both hands on the steering device," and "a need for a user interface that allows a driver to easily locate desired information to reduce the time that his/her focus is away from the road."  (*Id.*, Col. 1:47-52.) VIT's proposed construction of "page" implements the "efficient display of information" and "allow[s] a driver to easily locate desired information."

Claim 1 of the '677 patent provides that "each page includes at least one parameter for at least one of a plurality of optional subsystems for the vehicle."  (*Id.* at Col. 8:49-51.)  Figure 2 shows the "Audio System (Main)" subsystem information page 156, including the page "identifiers," (*id.* at Col. 4:61-63), clearly taking up the full screen of the selectable area.  (*Id.*, FIG. 2.)  VIT assumes it is accepted that page 156 of Figure 2 is "a complete full-screen image." There is not a "page" described or depicted anywhere in the patent that is anything other than "a

complete full-screen image." The defendants did not point to any such "page," and neither has the Court.

In order to permit a driver to "easily locate" the vehicle subsystem information and "efficient[ly] display" the information, a person of ordinary skill in the art would understand that the display must have certain characteristics consistent with efficiency and ease of use, such as a complete full-screen image, organization, and logical design. (*See* Wills Decl., ¶¶ 13-14, 18-19.) As Dr. Wills explains, a person of ordinary skill in the art would understand that the "page" claimed in the '677 patent would take up the full screen of the selectable area, as shown in Figure 2, and present complete information about a selected vehicle subsystem. (*Id.* ¶ 14.) Using the "complete full screen" reduces distractions that might cause the driver to struggle to identify the desired subsystem parameter or cause the driver to spend an unsafe amount of time viewing the display. (*Id.*) An incomplete full-screen image, where only some subsystem information is displayed to the driver, would require the driver to scroll through the page to find the desired subsystem information not being displayed, as when one scrolls through a web page, and would require the driver to take his/her eyes off the road for a longer period. (*Id.* ¶¶ 13-14.) Similarly, a partial screen image, where the screen includes other displayed information unrelated to the displayed "page," might present the risk that too much information was displayed to the driver at a given time, which again would force the driver to divert attention from the road. (*Id.* ¶ 14.) For these reasons, Dr. Wills opines that a "complete full-screen image" is a reasonable construction of "pages" claimed in the '677 patent.

The Court's construction of "pages" includes a requirement of information "that can be displayed on a screen at one time." This aspect of the Court's construction is similar to a "complete full-screen image" because "at one time" means that the relevant or desired subsystem

information is displayed "all at once," and, for example, scrolling is not required.  (*Id.* ¶ 13.)  In that sense, as Dr. Wills points out, "at one time" is similar to "complete" in that the subsystem information is displayed to the driver in such a way to "allow a driver to easily locate desired information to reduce that time that his/her focus is away from the road," and to "efficient[ly] display" vehicle information.  ('677 patent, Col. 1:47-52, 15-18.)

The biggest difference between the Court's construction and VIT's construction favors VIT's construction, and does not justify criticism of VIT's construction as exceptionally wrong. VIT's construction refers to the page itself—the complete full-screen image.  That is consistent with the patent.  The Court's construction refers to that which can be displayed on a screen.  In the context of the '677 patent and the art, it is no more appropriate to portray VIT's reliance on the page, as opposed to its potential contents, as exceptionally erroneous as it would be to say that VIT would be wrong if it construed a "page" of a book to be "one side of a leaf of something printed or written, as a book, manuscript, or letter," *see* www.dictionary.reference.com (first definition of the noun "page"), rather than "a collection of information that can be displayed on one side of a leaf of something printed or written, as a book, manuscript, or letter."  "Call me Ishmael" is "a collection or section of information that can be displayed on a [a leaf of something printed or written, as a book, manuscript, or letter] at one time," but it is not a "page."  In the context of the '677 patent, it is reasonable to look at the image on the screen.

Because there is similarity between these aspects of VIT's proposed construction and the construction adopted by the Court, it cannot be true that VIT's proposal is so without merit that the case is exceptional.

    2.    <u>There Is Ample Support in The Intrinsic Record For VIT's Construction.</u>

In its motion for summary judgment, JLRNA argued that VIT's construction lacked intrinsic support because the discussion of formatting in the specification "relates to the

***identifier*** that represents the 'page,' not the page itself."  (D.I. 89 at 13 (emphasis in original);
*see also* D.I. 115 at 8-9 ("The specification passage that VIT cites for support only refers to page
'identifiers,' not a 'page,' and it provides exemplary embodiments, which do not create
limitations for the claim terms.")).  Actually, the discussion of formatting to which JLRNA
points refers to the identifiers 154 of Figure 2, which are identifiers that can be used to select
pages other than the displayed page.  These identifiers 154 are part of the displayed page 145,
and identifiers 154 will appear on any new page image that is displayed.  JLRNA's argument,
and the Court's finding, overlooks the fact that the formatted "identifiers" are part of the "page,"
not distinct from the page.  There is no difference between "the identifier for the page" and "the
page itself."

Figure 2 of the '677 patent shows page 156 to be coextensive with the selectable area
122.  (*See* '677 patent, FIG. 2; *see also* Wills Decl. ¶ 17.)  As shown in annotated Figure 2
below, selectable area 122 shares the same boundary as page 156.



('677 patent, FIG. 2; *see also id.*, Col. 4:45-49 ("Display 118 includes a fixed area 120, a
selectable area 122, and two warning areas 150, 152.  Fixed area 120 displays vehicle

information and selectable area 122 displays a page of parameters as discussed above.").)  Figure 2 also shows "identifiers 154 for some or all of the pages that can be displayed in the selectable area 122."  (*Id.*, Col. 4:62-63.)  A view of the lower right corner of the page 156 and the rest of the right side of page 156 confirms that the identifiers 154 are part of the page 156.  The boundary of the page 156 is the same, regardless of whether there is an identifier at the rightmost edge of the page 156.

Because the page 156 is coextensive with the selectable area 122, and the identifiers 154 are displayed in the selectable area 122, the identifiers 154 are therefore unquestionably on the page 156.  (Wills Decl. ¶ 17.)  As Dr. Wills explains, a person of ordinary skill in the art would understand that the page 156 includes the formatting associated with the page identifiers.  (*Id.* ¶ 16; '677 patent, Col. 4:63-66 ("The identifier that represents the page currently being displayed can be highlighted (i.e., a unique color, bold, designated location, reverse colors, etc.).").)  In other words, the page 156 includes what the Court and JLRNA agree is formatting, and it is not possible to dismiss VIT's formatting argument with an argument that only the identifiers are formatted.  VIT submits that these points cannot be fairly disputed, and it certainly cannot be said that VIT's argument is not made in good faith.  The criticism that only the identifiers are formatted is in fact an acknowledgment that the page 156 is formatted.  JLRNA argued, and the Court appeared to agree, that the formatting argument has no basis only because the identifiers are formatted, but that does not follow.  The identifiers are every bit as much a part of the page as any other part of the page, such as the parameters, which the specification states share the formatting of the identifiers.  ('677 patent, Col. 6:37-38 ("Similar to the identifiers discussed above, the selected parameter can be highlighted on the page.").)

Moreover, the concept of requiring formatting for the page is supported by other parts of the intrinsic record.  As discussed above, the '677 patent seeks to provide a safer, more efficient vehicle display to minimize the time a driver's eyes are away from the road or his or her hands are off the steering wheel.  ('677 patent, Col. 1:47-52, 15-18.)  As Dr. Wills explains, an efficient display of vehicle information requires organization.  (Wills Decl. ¶¶ 18-19.)  This organization can take different forms, but VIT's proposal of "formatting" is consistent with having an organized display of information to facilitate the efficient display of vehicle information and to improve the driver's ability easily to locate the parameters he or she must select.  Though incorrect in the Court's opinion, the inclusion of formatting in the construction of "pages" was not so unreasonable in view of the object of the invention.  The criticism that formatting should not be a requirement because the identifiers are formatted fails because the formatted identifiers are part of the page and the parameters that are displayed on the pages share similar formatting features as the identifiers.

## IV.    CONCLUSION

For the foregoing reasons, VIT respectfully requests that the Court deny JLRNA's motion to declare this case exceptional.

Dated:  August 17, 2015

Of Counsel:

Robert E. Freitas
Daniel J. Weinberg
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, CA 94065
(650) 593-6300
rfreitas@fawlaw.com
dweinberg@fawlaw.com

BAYARD, P.A.

 /s/ Stephen B. Brauerman
Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
Sara E. Bussiere (sb5725)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

Attorneys for Plaintiff
Vehicle Interface Technologies, LLC